UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DONALD R. JOHNSON                                    CIVIL ACTION

VERSUS                                               NUMBER: 06-9122

CORNEL HUBERT, WARDEN                                SECTION: "K"(5)

**REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(A), presently before the Court is the 28 U.S.C. §2254 application for federal habeas corpus relief of petitioner, Donald R. Johnson, and the State's response thereto. (Rec. docs. 1, 6). Having determined that an evidentiary hearing is not necessary, it is recommended, for the reasons that follow, that Johnson's petition be dismissed with prejudice.

Petitioner Johnson is a state prisoner who is presently incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.[1]/ On June 19, 2002, Johnson was found guilty of simple

---

[1]/ See petitioner's change of address, rec. doc. 8.

burglary after trial, by jury, in the Twenty-Second Judicial District Court for the Parish of St. Tammany, State of Louisiana.[2]/ On July 19, 2002, Johnson was sentenced to twelve years at hard labor with credit for time served.  Johnson directly appealed his conviction to the Louisiana First Circuit Court of Appeal which affirmed same in an unpublished opinion on June 27, 2003.  State v. Johnson, 848 So.2d 164 (La. App. 1st Cir. 2003)(table).  Writs were denied by the Louisiana Supreme Court on January 30, 2004.  State v. Johnson, 865 So.2d 73 (La. 2004).

Prior to his original sentencing, the State had filed a bill of information accusing Johnson of being a multiple offender and seeking an enhancement of his sentence under LSA-R.S. 15:529.1, Louisiana's recidivism statute.  Following numerous continuances of that matter, on September 3, 2003, a hearing was held and Johnson was adjudicated a fifth felony offender, whereupon his original twelve-year sentence was vacated  and he was re-sentenced to a term of twenty years under R.S. 15:529.1.[3]/ Johnson's multiple offender adjudication would become the subject of the separate direct criminal appeal and his twenty-year sentence was affirmed by the

---

[2]/ According to the trial transcript and minutes, the jury deliberated for all of twenty-two or twenty-three minutes before returning its guilty verdict.

[3]/ As a fifth felony offender, Johnson faced an enhanced jail term of twenty years to life.  LSA-R.S. 15:529.1(A)(1)(c)(i).

Louisiana First Circuit on September 17, 2004.  State v. Johnson, 885 So.2d 54 (La. App. 1st Cir. 2004)(table).  Writs were denied by the Louisiana Supreme Court on March 11, 2005.  State v. Johnson, 896 So.2d 64 (La. 2005).

While the appeal of his enhanced sentence was pending before the Louisiana First Circuit, Johnson had filed a post-conviction relief application ("PCRA") in the trial court on June 4, 2004. (St. ct. rec., vol. 2 of 4).  That matter was denied with written reasons on July 7, 2004. (Id.). Rather than filing an application for supervisory writs to the Louisiana First Circuit as allowed by LSA-C.Cr.P. Art. 930.6(A), Johnson instead filed a notice of appeal and asked the trial court to set a return date. (Id.).  The Louisiana First Circuit ultimately dismissed Johnson's appeal as improvidently taken on April 18, 2005 but it did allow him until April 29, 2005 within which to file an application for supervisory writs without the necessity of obtaining a return date from the trial court.  State v. Johnson, No. 2005-KA-0598 (La. App. 1st Cir. April 18, 2005)(unpublished order).  Johnson, however, did not heed the advices of the Louisiana First Circuit in that he failed to file his writ application by April 29, 2005 and instead filed a motion in the trial court on June 8, 2005 asking that a new return date be set by which he was to file his writ.  (St. ct. rec., vol. 3 of 4).  Pursuant to Johnson's motion, he was given until July 5,

2005 within which to file his supervisory writ application with the Louisiana First Circuit. (Id.). Johnson ultimately filed his writ application on August 8, 2005 and it was denied by the Louisiana First Circuit on October 31, 2005. State v. Johnson, No. 2005-KW-1746 (La. App. 1st Cir. Oct. 31, 2005)(unpublished order). Writs were denied by the Louisiana Supreme Court on August 18, 2006. Johnson v. State, 935 So.2d 149 (La. 2006). In the interim, Johnson had filed a motion for amendment, modification, or reconsideration of sentence which the trial court denied on August 30, 2006. (St. ct. rec., vol. 3 of 4). The respondent concedes that Johnson has exhausted available state court remedies as required by 28 U.S.C. §2254(b)(1)(A) and that his petition was timely-filed under 28 U.S.C. §2244.

In the instant application brought pursuant to §2254, Johnson presents two claims for relief. First, he alleges that a confession was wrongfully admitted at his trial in violation of his Fifth Amendment right against self-incrimination. (Rec. doc. 1-2, pp. 10-12). Second, Johnson argues that he was denied the effective assistance of counsel based on counsel's failure to present a viable ground in support of his motion for new trial and counsel's failure to call Detective Arrowood to testify at the hearing on petitioner's motion to suppress his identification. (Rec. doc. 1-2, pp. 12-24). In order to facilitate a resolution of

4

Johnson's claims, the Court recalls the facts surrounding the crime in question as aptly summarized by the Louisiana First Circuit in the context of his direct criminal appeal, as follows:

> [o]n or about August 31, 1999, the defendant entered the St. Peter's Early Childhood Development Center, located on the campus of St. Peter's School in Covington, Louisiana, and removed items from the purses of three teachers' aides. On the date in question, the three teacher's aides, Jan Mura, Jan Mayronne, and Sandra English, left their purses in the building while they took their students to eat lunch at St. Scholastica Academy High School.
>
> According to the testimony of Ms. English, on the night of the offense, she noticed that her driver's license and check card were not in her purse. The next day, she talked to her co-workers about the missing items. Ms. Mura discovered that a sum of money that was previously in her wallet was no longer there and that her credit cards were no longer in her purse. After receiving information concerning the missing items of the other teacher's aides, Ms. Mayronne examined the contents of her purse and discovered that her driver's license, credit card, and four checks were missing.
>
> The three teacher's aides discussed the situation with the school principal. The principal reported the incidents to the Covington Police Department. The Baton Rouge City Police Department was contacted after it was discovered that one of the credit cards was being used in Baton Rouge, Louisiana. The two police departments developed the defendant as a suspect. The owner of a store in Baton Rouge, Wallpaper for Less, identified the defendant in two separate photographic line-ups as the person who entered his store and purchased items with a credit card that

>belonged to Ms. English.
>
>The defendant was ultimately arrested and charged with the instant offense. He provided a signed statement to the police divulging his actions.
>
><div align="right">Johnson, No. 2002-KA-2429<br>(unpub. op. at pp. 2-3).</div>

Petitioner's first claim is that an inculpatory statement was wrongfully admitted at his trial in violation of his Fifth Amendment rights. More particularly, Johnson alleges that the confession in question was given to Detective Tim Browning of the Baton Rouge Police Department prior to petitioner being arrested for simple burglary and being given Miranda[4]/ warnings specifically for that offense.

As observed by the Louisiana First Circuit in the context of petitioner's direct appeal, although the burglary in question occurred in St. Tammany Parish, one of the credit cards taken in the crime was used to make unauthorized purchases in Baton Rouge. As such, law enforcement officials from the two jurisdictions were involved in the investigation. Immediately prior to the start of petitioner's trial, the state court held a hearing on Johnson's motion to suppress his confession and identification. Detective Browning of the Baton Rouge Police Department testified that he had

---

[4]/ See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966).

been contacted by Detective Doug Arrowood of the Covington Police Department about the burglary which was factually similar to an offense petitioner had committed in the Baton Rouge area and was already in custody for.  What was unique about the two crimes was that petitioner had worn women's clothing during their commission.  Browning would later compile a photographic lineup consisting of a picture of Johnson and five other males wearing women's clothing.  Once shown to one of the merchants where petitioner had made fraudulent charges, that merchant picked out Johnson's picture instantly.

    Browning testified that after Johnson was initially arrested in Baton Rouge on the charge emanating from there, he advised petitioner that he may be questioned in the future in connection with the Covington burglary.  After the merchant positively identified Johnson as the individual who had used one of the credit cards taken in the burglary, Browning transported Johnson from the parish prison to his office for further questioning and told him he was being charged with the burglary.  Detective Browning then explained and presented petitioner with a "Rights of an Arrestee or Suspect" form which petitioner signed.  While the form indicated that Johnson was under arrest for access card theft and forgery, it also informed him that "[t]he possibility of ... [his] participation in other crimes ... [was] also under investigation",

7

following which the customary Miranda rights were enumerated. (St. ct. rec., vol. 1 of 4). Browning testified that Johnson acknowledged his understanding of those rights, signed the form, and then gave a statement implicating himself in the burglary. That detailed statement, in which specific unauthorized credit card charges were identified, was reduced to writing and was signed by Johnson in the presence of a notary. (Id.). After hearing this testimony and that of the identifying merchant, the trial Judge denied Johnson's motion to suppress, stating that the issue "... is not even close." (Tr. pp. 146-181). In Johnson's subsequent appeal of his conviction, the Louisiana First Circuit would similarly observe that "... the defendant's confession to entering the school took place after he was fully advised of his rights and without any threats, coercion, promises, or inducements." Johnson, No. 2002-KA-2429 (unpub. op. at p. 5).

Contrary to Johnson's present assertions, the testimonial and documentary evidence admitted both at his suppression hearing and again at trial readily demonstrates that his confession to the burglary was freely and voluntarily given and would result in what would be at least his fifth conviction, with the four preceding it being plea-based. (St. ct. rec., vol. 1 of 4, pp. 48-49). Even if that were not the case, "[a] suspect's waiver of Miranda rights is not invalid merely because police interrogators did not advise him

of the subject matter of the upcoming interrogation." Barnes v. Johnson, 160 F.3d 218, 223 (5th Cir. 1998), cert. denied, 526 U.S. 1118, 119 S.Ct. 1768 (1999)(citing Colorado v. Spring, 479 U.S. 564, 574, 107 S.Ct. 851, 857 (1987)).  The state courts' resolution of Johnson's Fifth Amendment claim was not contrary to, nor involved an unreasonable application of, clearly established federal law.  Barnes, 160 F.3d at 222.  This claim is without merit.

Johnson's second claim for relief is that he was denied the effective assistance of counsel as guaranteed by the Sixth Amendment.  To merit relief on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984), by demonstrating that: (1) counsel's performance was deficient and (2) that the deficient performance prejudiced the defense.  The burden of proving either element of Strickland is a heavy one and if proof of one element is lacking, the Court need not consider the other.  Id. at 697, 104 S.Ct. 2069.  Moreover, "[i]f the facts adduced at trial point so overwhelmingly to the defendant's guilt that even the most competent attorney would be unlikely to have obtained an acquittal, then the defendant's ineffective assistance claim must fail." Green v. Lynaugh, 868 F.2d 176, 177 (5th Cir.), cert. denied, 493

9

U.S. 831, 110 S.Ct. 102 (1989). In evaluating allegations of ineffectiveness, the Court must be mindful of the strong presumption that counsel's actions or inactions were part of a sound trial strategy. Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984); Boyd v. Estelle, 661 F.2d 388, 390 (5th Cir. 1981).

Johnson's first specification of alleged ineffectiveness is that counsel failed to present a viable ground in support of his motion for new trial. Following Johnson's sentencing as a habitual offender on September 3, 2003, his counsel filed: 1) a motion for new trial alleging that the verdict was contrary to the law and the evidence and 2) a motion for post-verdict judgment of acquittal in which he argued that the conviction was not supported by sufficient evidence and that the guilty verdict should be reversed or, alternatively, reduced to a lesser included offense. (St. ct. rec., vol. 1 of 4, pp. 55A-55C). Both motions were summarily denied by the trial judge on September 15, 2003. (Id.). Johnson states that his counsel's motion for new trial was properly denied because it was meritless. Rather than present the grounds that he did urge, Johnson alleges that his counsel should have argued that petitioner's conviction "... was based upon his uncorroborated confession/inculpatory statement, which was introduced at petitioner's trial without any proof that a crime had been committed by someone; that is, without proof of the corpus

10

delicti." (Rec. doc. 1-2, p. 14).

On direct appeal, Johnson's counsel presented two assignments of error, namely, that his motion for new trial was wrongfully denied and that the evidence was insufficient to support the conviction. Under the rubric of those assignments, counsel argued that none of the witnesses ever saw petitioner in or around the school at any time; that petitioner's confession was the only evidence of an entry; even assuming that an entry occurred, the State failed to prove that the entry was unauthorized; and, there was no evidence, assuming that an entry did occur, that petitioner had the intent to commit a felony therein. Johnson, No. 2002-KA-2429 (unpub. op. at p. 4). In disposing of those contentions, the Louisiana First Circuit opined as follows:

> [i]n his written and signed statement to the Baton Rouge City Police Department, the defendant stated the following "... I went into St. Peter's Early Childhood Center in Covington, La and took several different credit cards and checkbooks from out of some of the teacher's (sic) purses. I came back to Baton Rouge that same date and used two of the credit cards ..."
>
> The record does indicate that none of the witnesses were able to testify that they saw the defendant at the school on the day in question. However, the teacher's aides testified on that date, all three teacher's aides left their purses in the building when they took their students to lunch at St. Scholastica.

The purses were unattended in the same building during the same short time period. Therefore, items taken by the defendant were discovered missing from all three purses. Thus, the State presented evidence that the defendant had been present in St. Peter's Early Childhood Development Center on the date in question, and that the items in question were present there during that time. Further, the defendant was positively identified by Alcide Smith, owner of Wallpaper For Less, as the person who entered his store on the same date and used a credit card that bore the name Sandra English to make a large purchase. Mr. Smith remembered the defendant because at the time of the purchase, he was not sure if the defendant was a female or a male dressed in women's clothing. The defendant was described by Detective Tim Browning of the Baton Rouge City Police Department as a transvestite who daily dressed as a woman. An initial photographic line-up, consisting of what appeared to be all black females and the defendant dressed as a female, was conducted by Detective Arrowood of the Covington Police Department. Another photographic line-up conducted by Detective Browning consisted of six black male transvestites, including the defendant. Mr. Smith identified the defendant in both lineups. He also identified the defendant during the trial as the person who made the purchase on the date in question and stated that there was no doubt in his mind. Additionally the defendant's confession to entering the school took place after he was fully advised of his rights and without any threats, coercion, promises, or inducements. We find that the State presented sufficient evidence to corroborate the defendant's confession to entering the building and removing the items.

                  * * * * * * * * * *

In discussing the "unauthorized entering"

12

> element of the aggravated burglary and simple burglary statutes, the supreme court has stated that an entry with undeclared felonious intent is not "unauthorized" if it is with the knowing and voluntary consent, express or implied, of the owner or occupant of the premises. State v. Smith, 98-2078, p. 8 (La. 10/29/99), 748 So.2d 1139, 1143 (per curiam). In the case of a building that is open to the public, the consent to enter the building at the times when it is open to the public and within the confines designated is implied, regardless of the intent of the person so entering. State v. Dunn, 267 So.2d at 195-196. See also State v. Lozier, 375 So.2d 1333, 1336 (La. 1979).
>
> \* \* \* \* \* \* \* \* \* \* \*
>
> The testimony presented during the trial clearly established that St. Peter's is not open to the public. Further, no one, including parents, is allowed to enter the Early Childhood Development Center building unless they "check-in" in the administrative office first. The students and teachers working in the building would be the only exceptions. The testimony also indicates that the administrative office is located in a separate building on St. Peter's campus, thus, check-in would not be conducted in the Early Childhood Development Center. The administrative office would announce the entry of authorized visitors through an intercom system. All authorized visitors were also given name tags. We are convinced that a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded the State proved beyond a reasonable doubt that the defendant's entry of St. Peter's Early Childhood Development Center was unauthorized. Thus, we will now discuss the final element of the offense, "with the intent to commit a felony or any theft therein."

13

> The defendant contends that none of the witnesses who testified at the trial were able to say whether the defendant had some legitimate purpose for being in the school at that time. He states that there was no evidence to negate the possibility that he was initially in the school for some legitimate purpose, noticed that the building was empty, and then decided to take the items from the purses.
>
> * * * * * * * * * *
>
> After a careful review of the record, we find no legitimate evidence of any purpose for the defendant's presence in the building where the items in question were taken from. Defendant took the items and went to Baton Rouge and made purchases. Considering the facts of the instant case, the jury could reasonably infer that the defendant intended to commit a theft when he entered the Early Childhood Development Center building on St. Peter's School's campus.
>
> Therefore, we conclude a rational trier of fact, viewing all of the evidence as favorable to the prosecution as any rational fact finder can, could have concluded the State proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that defendant was guilty of simple burglary. The assignments of error are without merit.
>
> CONVICTION AND SENTENCE AFFIRMED
>
> <u>Johnson</u>, No. 2002-KA-2429 (unpub. op. at pp. 4-9).

Johnson alleges that counsel was ineffective for failing to raise one argument in support of his motion for new trial as

opposed to another. The Fifth Circuit has held that appellate counsel, whose conduct must satisfy Sixth amendment standards no less than that of trial counsel, is not ineffective merely because he fails to raise issues requested by a defendant, Hamilton v. McCotter, 772 F.2d 171, 182 (5th Cir. 1985), nor is counsel ineffective for failing to raise every possible point on appeal. Wicker v. McCotter, 738 F.2d 487, 497 (5th Cir.), cert. denied, 478 U.S. 1010, 106 S.Ct. 3310 (1986). Strickland teaches that ineffective assistance of counsel claims will often be easier to resolve on the prejudice side of the inquiry rather than the performance component. Strickland, 466 U.S. at 697, 104 S.Ct. at 2069. Here, Johnson cannot make the required showing of prejudice. Inasmuch as the ground that Johnson complains was omitted from the motion for new trial was subsequently presented in petitioner's direct criminal appeal and was adjudicated to his detriment by the Louisiana First Circuit and the Louisiana Supreme Court, the result of his proceeding would have been no different even if counsel had made the argument that Johnson now suggests.

    Petitioner's second specification of alleged ineffectiveness is that counsel failed to call Detective Arrowood to testify at the hearing on the motion to suppress regarding the manner in which he presented the photographic lineup to the identifying merchant to determine its fairness and to insure that Johnson's Due Process

15

rights were not violated.

At the hearing on petitioner's motion to suppress and again at trial, the identifying merchant, Al Smith, testified that he was presented with two photographic lineups within a short period of time following the August 31, 1999 burglary.  The first lineup, compiled by Detective Arrowood of the Covington Police Department, consisted of a picture of petitioner in women's clothing, just as he had been dressed when he attempted to use the victim's credit card, and the pictures of five other women.  Smith testified that all of the individuals in the lineup "... look[ed] basically the same" and all " ... appear[ed] to be female."  Without any suggestion or hesitation, Smith quickly identified petitioner as the perpetrator.  Shortly thereafter, Detective Browning of the Baton Rouge Police Department presented Smith with another lineup containing a picture of petitioner and five other transvestites. Once again, Smith picked out petitioner's picture without any hesitation on his part or suggestion by the detective.  At trial, Smith testified that the individuals depicted in this second photographic showing "appear[ed] to be female." During the motion-to-suppress hearing and again at trial, Smith positively identified Johnson in open court as the individual who had used the victim's stolen credit card. In both proceedings, Smith was questioned at length by both the prosecution and the defense as to the mechanics

of the two lineups.  (St. ct. rec., vol. 1 of 4, pp. 170-180, 212-225).

Petitioner alleges that counsel was ineffective for failing to call Detective Arrowood to testify at the pre-trial hearing on his motion to suppress.  Complaints of uncalled witnesses, in an effort to demonstrate ineffective assistance of counsel, are generally disfavored in federal habeas proceedings.  <u>Murray v. Maggio</u>, 736 F.2d 279, 282 (5th Cir. 1984).  This is so because "... the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness [would] testif[y] [to] are largely speculative."  <u>Boyd v. Estelle</u>, 661 F.2d 388, 390 (5th Cir. 1981)(quoting <u>Buckelew v. United States</u>, 575 F.2d 515, 521 (5th Cir. 1978)).  A habeas petitioner must thus overcome the strong presumption that his counsel's decision in not calling a witness was a strategic one, <u>Murray</u>, 736 F.2d at 282, and he must ultimately demonstrate that the witness was both available and would have testified favorably in his case. <u>Gomez v. McKaskle</u>, 734 F.2d 1107, 1109-10 (5th Cir.), <u>cert</u>. <u>denied</u>, 469 U.S. 1041, 105 S.Ct. 524 (1984); <u>Boyd</u>, 661 F.2d at 390.  Johnson has not made that required showing here nor has he presented any evidence that the photo showing in question was unduly suggestive and led to an irreparable misidentification.  <u>See</u> <u>Stoval v. Denno</u>, 388 U.S. 293, 87 S.Ct. 1867 (1967).  The state court's resolution of petitioner's

ineffectiveness claim was not unreasonable and habeas relief is not warranted.

**RECOMMENDATION**

For the foregoing reasons, it is recommended that the application for federal habeas corpus relief of Donald R. Johnson be dismissed with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996)(<u>en banc</u>).

New Orleans, Louisiana, this  17th  day of   October  , 2008.

ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE